EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sunny Rosario Sánchez, Juan Carlos Ortega Cruz, Elmer Rivera Calderón<br><br>Peticionarios<br><br>v.<br><br>Nélida Jiménez Velázquez y otros<br><br>Recurrida | Certiorari<br><br>2007 TSPR 42<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2005-1009

Fecha: 9 de marzo de 2007

Tribunal de Apelaciones:

>           Región Judicial de Bayamón-Panel VII

Juez Ponente:

>           Hon. Guillermo J. Arbona Lago

Abogado de la Parte Peticionaria:

>           Lcdo. Jesús R. Morales Cordero

Oficina del Procurador General:

>           Lcda. Sarah Y. Rosado Morales
>           Procuradora General Auxiliar

Materia: Injuction, Daños y Perjuicios y Derechos Civiles

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sunny Rosario Sánchez, Juan
Carlos Ortega Cruz, Elmer
Rivera Carrión

    Peticionarios

             v.

Nélida Jiménez Velázquez y
otros

    Recurrida

CC-2005-1009

SENTENCIA

San Juan, Puerto Rico, a 9 de marzo de 2007

Los peticionarios, la señora Sunny Rosario, el señor Juan Ortega y el señor Elmer Rivera trabajaban para la Oficina de Servicios Legislativos (la "Oficina" o la "OSL"), en posiciones de confianza. En enero de 1993 fueron destituidos. La señora Rosario trabajaba como bibliotecaria I en esa dependencia desde el 1988. Al momento de su despido había laborado en la Oficina por espacio de más de veinte (20) años. El señor Ortega se desempeñaba también como bibliotecario I y había comenzado a trabajar en la OSL en el 1986. Por su parte, el co-demandante, señor Rivera había comenzado a laborar en

la Oficina en el año 1975 como auxiliar de, contabilidad llegando a alcanzar el puesto de contador IV, el cual ocupaba al momento de su despido.

Como resultado de las elecciones generales de noviembre de 1992, el Partido Nuevo Progresista asumió las riendas del gobierno tanto de la Rama Ejecutivo como en la Asamblea Legislativa. La Representante Zaida Hernández Torres fue electa Presidenta de la Cámara de Representantes y el Senador Roberto Rexach Benítez, Presidente del Senado de Puerto Rico. En enero de 1993, los presidentes de ambos cuerpos nombraron a la licenciada Nélida Jiménez Velásquez directora de la Oficina de Servicios Legislativos.

El 29 de enero de 1993, la licenciada Jiménez destituyó a los peticionarios de sus puestos en la OSL. Poco después, el 23 de marzo de 1993, éstos instaron una demanda por violación a los derechos civiles, ante el Tribunal de Primera Instancia en contra de los presidentes de ambos cuerpos legislativos, la licenciada Jiménez, la Cámara de Representantes y el Senado de Puerto Rico.

En la demanda se alegó que los demandantes habían sido despedidos de sus puestos por motivo de su afiliación política en violación a sus derechos constitucionales. Se indicó además, que los reclamantes no eran afiliados al Partido Nuevo Progresista, que la afiliación política no era un requisito indispensable para el desempaño de sus funciones y que tenían una expectativa razonable de continuidad en el empleo. Finalmente, solicitaron se expidiese un *injuction* en

que se le ordenase a los demandados a reinstalarlos a sus respectivos puestos y solicitaron además la correspondiente compensación en daños y perjuicios.

Luego de varios trámites procesales, que son innecesarios aquí relatar, el 3 de abril de 1998, el foro primario dictó una sentencia sumaria parcial en la que desestimó la demanda en contra del licenciado Rexach Benítez y la licenciada Hernández Torres en sus capacidades personales así como la demanda en contra de los cuerpos legislativos. El caso prosiguió contra los nuevos presidentes, el licenciado Charlie Rodríguez como Presidente del Senado y contra el señor Edison Misla Aldarondo como Presidente de la Cámara de Representante.

En mayo de 2004, luego de una serie de negociaciones, los demandantes suscribieron un acuerdo transaccional con la entonces directora de OSL y el entonces Presidente de la Cámara de Representantes. El litigio continuó únicamente en cuanto al reclamo en daños y perjuicios contra la recurrida.

Celebrado el juicio, el tribunal dictó sentencia declarando con lugar la demanda. Concluyó que los demandantes eran empleados de confianza por lo que no tenían un interés propietario sobre su puesto. La sentencia concluyó que la autoridad nominadora actuó políticamente al despedirlos de sus puestos en violación a sus derechos a la libre asociación y a la protección de sus ideas políticas. El tribunal *a quo* señaló que aun cuando los demandantes no probaron cuál era la afiliación política de los empleados que

le sustituyeron, sí había quedado demostrado que la motivación para el despido había sido precisamente la afiliación política de éstos.

Apelado el caso ante el foro apelativo intermedio éste revocó el dictamen apelado. En la sentencia revocatoria se indicó que para establecer un caso *prima facie* de discrimen era indispensable probar tres requisitos, a saber: (1) que no existía motivo racional para el despido; (2) que el demandante estaba identificado claramente con un partido político distinto al de la autoridad nominadora; (3) que fue sustituido en el empleo por una persona afiliada a un partido político distinto al suyo. Dicho foro concluyó que los demandantes no habían presentado prueba del tercer requisito antes mencionado, por lo que no quedó establecido el caso *prima facie* de discrimen. Procedió así a revocar el dictamen recurrido y desestimar la reclamación.

Insatisfechos con la determinación del Tribunal de Apelaciones, los demandantes acudieron ante este Tribunal el 24 de octubre de 2005. Señalaron como único error lo siguiente:

> Erró el Tribunal de Apelaciones al revocar la Sentencia dictada por el TPI basándose en que la prueba de la afiliación política de los reemplazos de un empelado (sic) despedido por su afiliación política que reclama ante el Tribunal por la violación de sus derechos constitucionales a la libre expresión y asociación es requisito indispensable de la acción en daños y perjuicios al amparo de la Ley de Derechos Civiles de Puerto Rico y contraparte federal.

Expedimos el auto solicitado. Las partes han comparecido. Evaluados los escritos presentados y el

expediente del caso se dicta sentencia revocando la sentencia dictada por el Tribunal de Apelaciones y se reinstaura la sentencia dictada por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una opinión de conformidad a la que se le unen el Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Fiol Matta. Los Jueces Asociados señor Rebollo López y señor Rivera Pérez disienten sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sunny Rosario Sánchez, Juan
Carlos Ortega Cruz, Elmer
Rivera Carrión

     Peticionarios

         v.

Nélida Jiménez Velázquez y
otros

     Recurrida

CC-2005-1009

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le unen el Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 9 de marzo de 2007

En esta ocasión debemos determinar si para prevalecer en una demanda instada a tenor con la Ley de Derechos Civiles de Puerto Rico, donde la parte demandante reclama que fue cesanteada de su empleo por motivo de su afiliación política, ésta tiene que probar como elemento de su causa de acción, la afiliación política de quien la reemplazó en su puesto.

**I**

Los peticionarios, la señora Sunny Rosario, el señor Juan Ortega y el señor Elmer Rivera trabajaban para la Oficina de Servicios Legislativos (la "Oficina" o la "OSL"), en posiciones de confianza.

En enero de 1993 fueron destituidos. La señora Rosario trabajaba como bibliotecaria I en esa dependencia desde el 1988.[1] Al momento de su despido, había laborado en la Oficina por espacio de más de veinte (20) años. El señor Ortega se desempeñaba también como bibliotecario I y había comenzado a trabajar en la OSL en el 1986. Por su parte, el co-demandante, señor Rivera había comenzado a laborar en la Oficina en el año 1975 como auxiliar de contabilidad, llegando a alcanzar el puesto de contador IV, el cual ocupaba al momento de su despido.

Como resultado de las elecciones generales de noviembre de 1992, el Partido Nuevo Progresista asumió las riendas del gobierno, tanto de la Rama Ejecutiva como de la Asamblea Legislativa. En vista de ello, la Representante Zaida Hernández Torres fue electa Presidenta de la Cámara de Representantes y el Senador Roberto Rexach Benítez, Presidente del Senado de Puerto Rico. En enero de 1993, los presidentes de ambos cuerpos nombraron a la licenciada Nélida Jiménez Velázquez directora de la Oficina de Servicios Legislativos.

El 29 de enero de 1993, la directora de la OSL destituyó a los peticionarios de sus puestos en la OSL. Poco después, el 23 de marzo de 1993, éstos instaron una demanda ante el Tribunal de Primera Instancia en contra de los presidentes de ambos cuerpos legislativos, la licenciada Jiménez, la Cámara de Representantes y el Senado de Puerto Rico. Los

---

[1] La Biblioteca Legislativa está adscrita a la Oficina de Asuntos Legislativos.

presidentes fueron demandados tanto en su capacidad oficial como personal, mientras que la licenciada Jiménez sólo fue demandada en su capacidad personal.

La demanda en cuestión se instó a tenor con las disposiciones de la Ley de Derechos Civiles de Puerto Rico, 32 L.P.R.A. sec. 3224(3)(b) y la Ley de Derechos Civiles de 1871, 42 U.S.C. sec. 1983.  En la misma se alegó que los demandantes habían sido despedidos de sus puestos por motivo de su afiliación política en violación a sus derechos constitucionales.  Se indicó además, que los reclamantes no eran afiliados al Partido Nuevo Progresista, que la afiliación política no era un requisito indispensable para el cabal desempaño de sus funciones y que tenían una expectativa razonable de continuidad en el empleo.  Finalmente, solicitaron se expidiese un *injunction* en que se le ordenase a los demandados a reinstalarlos a sus respectivos puestos y solicitaron además la correspondiente compensación en daños y perjuicios.

Luego de varios trámites procesales, los demandados solicitaron la desestimación de la demanda instada.  Entre otras razones, reclamaron la defensa de inmunidad parlamentaria así como la de inmunidad condicionada.  La directora de OSL por su parte, planteó que los despidos obedecieron al pobre desempeño de los empleados ya que, alegadamente, al asumir su cargo encontró la biblioteca de la Asamblea Legislativa en total desorden.  Adujo que estas circunstancias unidas al hecho que las plazas que ocupaban

los demandantes eran plazas de confianza, constituyeron razones legítimas para la separación de éstos de sus respectivos puestos.

El 3 de abril de 1998, el foro primario dictó una sentencia sumaria parcial en la que desestimó la demanda en contra del licenciado Rexach Benítez y la licenciada Hernández Torres en sus capacidades personales así como la demanda en contra de los cuerpos legislativos. El caso prosiguió contra los nuevos presidentes de ambos cuerpos legislativos.

En la sentencia dictada, el foro primario resolvió que los demandantes no tenían un interés propietario en sus puestos. De otra parte, declaró sin lugar la petición de *injuction* dirigida contra la licenciada Jiménez y se negó a desestimar la demanda en contra de ésta. Inconformes con esta determinación, los demandantes acudieron ante el foro apelativo intermedio. Éste confirmó el dictamen recurrido y el caso fue devuelto al tribunal de instancia para que continuaran los procedimientos.

En mayo de 2004, luego de una serie de negociaciones, los demandantes suscribieron un acuerdo transaccional con la entonces directora de OSL y el entonces Presidente de la Cámara de Representantes. El litigio continuó únicamente en cuanto al reclamo en daños y perjuicios contra la recurrida.

Luego de un extenso trámite que no es necesario pormenorizar, el foro primario vio la cusa en su fondo. En el juicio desfiló abundante prueba documental como testifical

por ambas partes.  Concluido el mismo, el tribunal dictó sentencia declarando con lugar la demanda.  Concluyó que los demandantes eran empleados de confianza y como tal no tenían un interés propietario sobre su puesto.  Dispuso que la autoridad nominadora "actuó políticamente al despedirlos de sus puestos en violación a sus derechos a la libre asociación y a la protección de sus ideas políticas. . . ." Apéndice a la petición de *certiorari*, pág. 62.

El tribunal *a quo* señaló que aun cuando los demandantes no probaron cuál era la afiliación política de los empleados que le sustituyeron, sí había quedado demostrado que la motivación para el despido había sido precisamente la afiliación política de éstos.  Sobre este particular se indicó en la sentencia dictada lo siguiente:

> El hecho de que no se probara la afiliación política de quienes sustituyeron a los demandados, no puede, bajo las circunstancias presentes, frustrar la presentación de una causa de acción válida como la que nos ocupa, cuando en el fondo los elementos esenciales de prueba discutidos, y no refutados, apuntan a que la motivación para los despidos de los demandantes no fue otra que la ideología política de éstos.  No podemos adoptar un enfoque dogmático infranqueable en el examen literalista de los requisitos de este tipo de reclamo, si ello sirve de impedimento para advertir un escenario de discrimen en los casos en que esto es indudable.  De actuar de modo contrario, abdicaríamos nuestra ineludible responsabilidad de hacer cumplida justicia, individualizando la norma en función a los hechos específicos de cada caso.

Inconforme, la demandada apeló el dictamen desfavorable al Tribunal de Apelaciones.  Alegó en su recurso que los empleados despedidos no habían presentado prueba sobre la afiliación política de los sustitutos por lo cual no se

activó la presunción de discrimen y como resultado de lo anterior procedía desestimar la demanda instada.

El 24 de agosto de 2005, el Tribunal de Apelaciones dictó sentencia revocando el fallo apelado. Concluyó dicho foro que para establecer un caso *prima facie* de discrimen era indispensable probar tres requisitos, a saber: (1) que no existía motivo racional para el despido; (2) que el demandante estaba identificado claramente con un partido político distinto al de la autoridad nominadora; (3) que fue sustituido en el empleo por una persona afiliada a un partido político distinto al suyo. El foro apelativo intermedio concluyó que los demandantes no habían presentado prueba del tercer factor antes mencionado, por lo que no quedó establecido el caso *prima facie* de discrimen. Procedió así a revocar el dictamen recurrido y desestimar la reclamación.

Insatisfechos con la determinación del Tribunal de Apelaciones, los demandantes acudieron ante este Tribunal el 24 de octubre de 2005. Señalaron como único error lo siguiente:

> Erró el Tribunal de Apelaciones al revocar la Sentencia dictada por el TPI basándose en que la prueba de la afiliación política de los reemplazos de un empelado (sic) despedido por su afiliación política que reclama ante el Tribunal por la violación de sus derechos constitucionales a la libre expresión y asociación es requisito indispensable de la acción en daños y perjuicios al amparo de la Ley de Derechos Civiles de Puerto Rico y su contraparte federal.

Expedimos el auto solicitado. La parte peticionaria presentó su correspondiente alegato y el Procurador General hizo lo propio respecto la parte recurrida.

**II**

El caso de marras nos permite expresarnos sobre los requisitos de una causa de acción por discrimen político y cómo éstos se interrelacionan con el establecimiento de un caso *prima facie* de discrimen.

**A**

El despido de empleados públicos por motivo de su afiliación política, lamentablemente, es un problema recurrente en la administración pública puertorriqueña. Al concluir un cuatrienio y escenificarse un cambio de administración gubernamental, se multiplican los litigios de esta naturaleza en los tribunales del Estado Libre Asociado de Puerto Rico, así como el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Tal práctica afecta perniciosamente la buena marcha de la cosa pública así como transgrede la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 1, que proscribe específicamente el discrimen por motivo de ideas políticas.

Consistentemente hemos expresado nuestro rechazo a actuaciones de esta naturaleza, reconociendo que el empleado público en Puerto Rico goza de protección contra el discrimen en su empleo. *Camacho Torres v. ADFET*, res. 22 de mayo de 2006, 168 D.P.R. ___, 2006 TSPR 88; *López Cintrón v. Miranda Marín*, res. 16 de diciembre de 2005, 166 D.P.R. ___, 2005 TSPR 197; *Alberty v. Bco. Gubernamental*, 149 D.P.R. 655 (1999); *McCrillis v. Aut. de Navieras de P.R.*, 123 D.P.R. 113 (1982). Protección que se extiende a empleados de confianza

a pesar de que éstos no poseen un expectativa de permanencia en sus puestos por estar sujetos a la libre selección y remoción por la autoridad nominadora. *Alberty, ante; McCrillis, ante; Ramos v. Srio. de Comercio*, 112 D.P.R. 514 (1982). En casos de empleados de confianza, el poder nominador está impedido de despedirles por consideraciones político-partidistas, salvo que se demuestre que el criterio de afiliación política es un requisito necesario para el adecuado desempeño del cargo que ocupa el empleado de confianza. *Matías v. Mun. de Lares*, 150 D.P.R. 546, 551-552 (2000).

En casos de empleados de confianza, la reclamación de discrimen no se configura como una violación al debido proceso de ley, habida cuenta que el empleado de confianza no tiene un interés propietario en el puesto que ocupa, por lo que el empleado **no tiene derecho a reinstalación en el empleo**. Mas bien, se reclama por violación al Art. II, Sec. 1 de la Constitución del Estado Libre Asociado que prohíbe el discrimen por ideología política o, por violación al derecho de libre expresión y asociación del empleado bajo la Constitución del Estado Libre Asociado, o bajo la Primera Enmienda de la Constitución de los Estados Unidos. **En cuyo caso el único remedio disponible para resarcir el daño es la correspondiente compensación monetaria.**

### B

La reclamación de discrimen político en el empleo público es una acción civil ordinaria. Como tal, el

demandante tiene el peso de la prueba de demostrar que ha sido objeto de discrimen como resultado de su afiliación política y que ello le ha causado un daño. Es decir, el demandante tiene que demostrar que perdió su empleo o estuvo sujeto a una acción de personal perjudicial, debido a que pertenece a un partido distinto al de la autoridad nominadora quien toma la acción de personal impugnada en virtud del ánimo discriminatorio que profesa. *Véase*, *McCrillis, ante,* pág. 140; Reglas 10(A) y (B) de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R.10(A)-(B). El demandante deberá demostrar mediante preponderancia de la prueba que fue discriminado. Para hacer tal demostración, éste podrá valerse de evidencia directa, circunstancial y de aquellas presunciones que le favorezcan. *McCrillis, ante.* Reglas 10 (H) y 13 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(H), 13.

Respecto a las presunciones, debemos recordar que son éstas un mecanismo que permite relevar a la parte beneficiada por la presunción, de la obligación de presentar prueba para sostener un hecho. *Vincenti v. Saldaña*, 157 D.P.R. 37, 52 (1992). Esencialmente, son "reglas de inferencia dirigidas al juzgador de hechos . . .", no son evidencia. *Loc. cit.* Véase, E. Chiesa, *Tratado de Derecho Probatorio*, 1998, vol. 2, pág. 1087. Véase en igual sentido, C. Fishman, *Jones on Evidence Civil and Criminal*, Lawyers Cooperative Publishing, New York, 7th ed, sec. 4:2, pág. 301 ("A presumption is neither evidence nor a substitute for evidence.")

Tal y como nos indica el profesor Chiesa, son reglas que nos sirven "para hacer inferencias a partir de la evidencia presentada y admitida." Chiesa, *op. cit.*, págs. 1087-1088. Es decir, la existencia de una presunción permite que, si se establecen ciertos hechos básicos mediante la presentación de evidencia, el juzgador pueda concluir que existe el hecho presumido, salvo que la otra parte ofrezca prueba conducente a demostrar la no existencia de los hechos básicos y en consecuencia, la del hecho presumido. *McCrillis, ante*, pág. 141. *Véase*, Chiesa, *op. cit.*, págs. 1090-1091; Fishman, *op. cit.*, sec. 4:2, págs. 301-302. La presunción controvertible traslada a la parte perjudicada por la presunción, el peso de controvertirla.

En casos de discrimen político, hemos reconocido que se puede establecer **una presunción o inferencia de discrimen** cuando el empleado demuestra lo siguiente: "que no hay un motivo racional para su despido, que está identificado claramente con un partido político y que ha sido sustituido por una persona que pertenece a un partido distinto al suyo, el cual es el mismo de la autoridad nominadora. . . ." *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486, 502 (1990). *Véase*, *López Cintrón v. Miranda Marín, ante*. Establecida la presunción, "se transfiere al Estado el peso de la prueba para que refute la evidencia de discrimen presentada o pruebe afirmativamente que la afiliación política es un 'requisito apropiado' para el desempeño efectivo del cargo en cuestión." *Íbid. Véase* además, *López Cintrón v. Miranda Marín, ante*;

*McCrillis, ante*; *Báez Cancel v. Mun. de Guaynabo*, 110 D.P.R. 982 (1072).

Adviértase que el efecto de establecer los elementos del caso *prima facie* de discrimen, es invertir el peso de la prueba y relevar al demandante —-en ese momento—- de presentar prueba adicional respecto al hecho presumido. Corresponde entonces al demandado demostrar por preponderancia de la prueba que no hubo ánimo discriminatorio alguno toda vez que: (1) la afiliación política del demandante es un requisito indispensable para el desempeño cabal del cargo; ó (2) que existe una razón no discriminatoria para el despido. Si el demandado no aporta evidencia o, la aportada no convence al juzgador, éste entonces, por operación de la presunción, debe concluir que el hecho presumido ocurrió; es decir, que hubo discrimen.

Ello no quiere decir sin embargo, que los requisitos del caso *prima facie* sean elementos de la causa de acción por discrimen y que en ausencia de alguno de ellos no se pueda probar, mediante evidencia directa o circunstancial, que la parte fue objeto de discrimen debido a su afiliación política. Los elementos necesarios para el caso *prima facie* no son factores probatorios de la causa de acción de discrimen, sino mas bien facilitan cumplir con el peso de la prueba al quedar establecido el hecho presumido —-el discrimen-- mediante su inferencia. Las presunciones son formas de tratar la evidencia.

Reiteramos, derrotada la presunción de discrimen, el demandante tendrá que aportar durante el juicio alguna otra prueba que, creída por el juzgador, le permita concluir a éste que en efecto la afiliación política del demandante fue el motivo de la acción de personal objetada.  A modo de ejemplo, una de estas formas puede ser que el demandante demuestre que la razón articulada para el despido no fue nada más que un pretexto. *Véase Camacho Torres, ante.*

En *Rodríguez Cruz, ante*, pág. 502 n. 6, así lo intimamos cuando, luego de describir qué se exigía para establecer un caso *prima facie* de discrimen, en nota al calce, señalamos lo siguiente:  **"ello no impide que el empleado cesanteado presente prueba directa de discrimen político distinta a la señalada."**  (Énfasis nuestro.)  En estos casos lo que ocurre es que al no activarse la presunción, el peso de la prueba nunca se le transfiere al demandado.  Al demandante sin embargo, le asiste el derecho de probar que fue objeto de discrimen, lo que puede hacer mediante prueba directa o circunstancial, ahora, sin el beneficio de la presunción.  Después de todo, le corresponde a éste quien es la parte actora, el peso de la prueba para prevalecer en su reclamo.  Regla 10(A) de Evidencia, 32 L.P.R.A. Ap. IV, R.10(A).

Con el trasfondo doctrinal hasta aquí expuesto pasamos a atender la controversia traída ante nuestra consideración.

**III**

**A**

Conforme indicamos al inicio de nuestra ponencia, el Tribunal de Apelaciones sostuvo que procedía revocar el dictamen del Tribunal de Primera Instancia porque no había desfilado prueba de la afiliación política de las personas que sustituyeron a los demandantes en sus puestos. Indicó que en virtud de ello, no se probó un caso *prima facie* de discrimen, por lo que la parte demandada no venía obligada a presentar prueba. Concluyó entonces que no se configuró la causa de acción por discrimen.

El Procurador General, en representación de la parte demandada-recurrida, sostiene igual criterio. Nos arguye que nuestra trayectoria ha sido, desde *Baez Cancel, ante* hasta *Camacho Torres*, *ante*, aplicar la presunción de discrimen con dos propósitos esenciales: "en primer lugar, para transferir el *onus probandi* del empleado demandante al demandado, para facilitar el peso probatorio de los empleados; y, en segundo lugar, aplicar los mismos hechos básicos de la presunción como los elementos de la reclamación por discrimen político, igualmente, en aras de simplificar la carga probatoria del empleado." Alegato del Procurador General, pág. 19 del recurso de *certiorari*. Le asiste la razón al Procurador General en cuanto a su primera aseveración, pero no así respecto lo segundo que señala.

Ni en *Báez Cancel, McCrillis, Rodríguez Cruz, López Colón* o *Camacho Torres,* hemos sostenido que los requisitos

para establecer el caso *prima facie* de discrimen constituyen los elementos de la causa de acción por discrimen. La interpretación propuesta desvirtúa la naturaleza misma de la presunción. Como indicamos previamente, las presunciones no son ni evidencia ni su sustituto, constituyen sólo maneras de tratar la misma. Son reglas de inferencia dirigidas al juzgador para que, establecido los hechos básicos, pueda dar por probado el hecho presumido. "[M]ientras no se destruya el hecho presumido, éste prevalece en contra de la parte promovida con todas sus consecuencias", y el foro sentenciador viene obligado a darlo por probado. *Vincenti v. Saldaña, ante*, pág. 52. Pero aun si se destruye la presunción, a la parte favorecida le asiste el derecho a probar el hecho presumido. *Íbid.*

La parte actora, es decir la demandante, puede probar su reclamo mediante prueba directa o circunstancial, al margen de cualquier presunción. Esto es precisamente lo que ocurrió en este caso. Conforme se desprende de las determinaciones de hechos del tribunal sentenciador, las estipulaciones de las partes y la prueba documental aportada, no hay duda que los demandantes probaron que en efecto, habían sido objeto de discrimen por parte de la demandada por motivo de la afiliación política de éstos.

Veamos someramente algunas de las determinaciones y conclusiones del foro primario, las cuales están basadas en la abundante prueba documental y testifical que desfiló en el caso.

**B**

Comenzamos señalando que los demandantes fueron cesanteados el 29 de enero de 1993 por la demandada, entonces Directora de la Oficina de Servicios Legislativos.  A esta última le había sido encomendada la administración de dicha Oficina el 15 de enero de 1993; es decir, **apenas dos semanas antes de los despidos**.  El Tribunal de Primera Instancia estimó probado que dos (2) de los demandantes estaban afiliados al Partido Popular Democrático y uno favorecía la independencia, afiliación que era de conocimiento público en la Oficina.  Apéndice a la petición de *certiorari,* pág. 42. La demandada, por su parte, estaba afiliada al Partido Nuevo Progresista.

El foro sentenciador indicó que la parte "demandada planteó como justificación para separar a los empleados de la Biblioteca Legislativa, además de éstos ocupar puestos sujetos a libre remoción, el que la antedicha dependencia la encontrara en un total desorden y caos.  De ahí que estimara necesario contratar personal idóneo." *Loc. cit.* Respecto el demandante Rivera Calderón, la única justificación para su despido fue que la recurrida no "estaba satisfecha con la labor de Rivera Calderón" y que éste era un empleado de confianza.  Véase, Apéndice a la petición de *certiorari*, pág. 54.  El tribunal concluyó en su sentencia que la "demandada no adujo ni estableció elemento o incidente concreto alguno predicado en la labor de este demandante, para sostener tal proceder insatisfactorio." *Loc. cit.*

No empece la justificación esgrimida, el tribunal concluyó que la recurrida "no les solicitó que realizaran informes sobre el estado de la Biblioteca ni utilizó los que pudieran estar disponibles para alcanzar tal determinación. Tampoco requirió ni efectuó una evaluación del desempeño de dichos demandantes. No los entrevistó individualmente ni examinó sus expedientes de personal." *Loc. cit.* Además, **previo al despido, no se rindió ningún informe sobre las condiciones de la Biblioteca Legislativa, o del desempeño del personal adscrito a la misma.**

Por otro lado, **durante el juicio testificó el asesor en asuntos económicos de la OSL, afiliado al Partido Nuevo Progresista, quien indicó que le informó a la demandada sobre la competencia y capacidad de los demandantes en la ejecución de sus funciones.** Testimonio que está respaldado por los expedientes de personal de los demandantes. Apéndice a la petición de *certiorari*, págs. 43-45. Éste también testificó que en conversaciones con la demandada **ésta le solicitó que "acreditara la afiliación política de los empelados de la Oficina, como parte del proceso de balance político-partidista que para ésta era necesario preservar, al tiempo que mostró su preocupación en torno a la lealtad de éstos a la Oficia y su criterio sobre el personal que no era de la confianza de la nueva administración por no pertenecer al partido que para entonces había ganado las elecciones."** (Énfasis nuestro.) Apéndice a la petición de *certiorari,*

pág. 59. El tribunal sentenciador indicó expresamente que **este testimonio le mereció entera credibilidad.**

El tribunal concluyó categóricamente que, a base de lo anteriormente señalado --al igual que otros hechos probados que abonan a la conclusión del tribunal de instancia y que estimamos innecesario relatar--- "no cabe argüir que la demandada estaba ajena a la ideología política específica de los demandantes, no sólo porque lo obtuvo a través de la conversación sostenida con el señor Castro, sino porque conforme quedó ampliamente sostenido por la prueba, la afiliación política de los empleados de la Oficina era de conocimiento público en dicha dependencia. Finalmente casi la totalidad de los empleados despedidos respondían a corrientes políticas distintas a las de la autoridad nominadora, particularmente a aquella propia del PPD. [...] **Todos los anteriores elementos conducen a sostener el criterio de que lo que realmente pesó en la medida adoptada por la demandados, fue la afiliación política de los demandados.**" (Énfasis nuestro.) Apéndice a la petición de *certiorari,* pág. 59.

De lo anterior se desprende que el foro primario vio, escuchó y adjudicó la credibilidad de los testigos que desfilaron ante sí, sin que se desprenda de lo reseñado el perjuicio, pasión o parcialidad, que justificaría intervenir con la apreciación del juzgador. *Colón Muñoz v. Lotería de Puerto Rico*, res. 20 de abril de 2006, 167 D.P.R. ___, 2006 TSPR 65, y casos allí citados en nota 94.

Procede se revoque la sentencia dictada por el Tribunal de Apelaciones y se reinstale la emitida por el Tribunal de Primera Instancia, tal y como se ordena en la Sentencia dictada en el día de hoy.


Anabelle Rodríguez Rodríguez
Juez Asociada